UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS REED BUTLER,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS,
KEITH PAPENDICK, and
DEENA M. LEIGHTON,

        Defendants.
_____/

Case No. 2:20-cv-11100
District Judge Denise Page Hood
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY DEFENDANT LEIGHTON'S EXHAUSTION-BASED MOTION FOR SUMMARY JUDGMENT (ECF No. 62)

**I.   RECOMMENDATION**: The Court should **DENY** Defendant Leighton's exhaustion-based motion for summary judgment (ECF No. 62).

**II.   REPORT**

    **A.   Background**

Thomas Reed Butler is currently located at the Michigan Department of Corrections (MDOC) G. Robert Cotton Correctional Facility (JCF). (ECF No. 66.) In April 2020, while located at JCF, Butler filed the instant lawsuit against the MDOC, Dr. Keith Papendick, and Nurse Deena M. Leighton. (ECF No. 1, ¶¶ 94-96.) In July 2020, the complaint was dismissed as to Defendant MDOC for

"failing to state a claim upon which relief can be granted." (ECF No. 5, PageID.50.) In September 2022, following an exhaustion-based motion for summary judgment (ECF No. 22), Defendant Papendick was dismissed (ECF No. 33). Therefore, only Defendant Leighton remains.

Defendant Leighton filed an initial answer in September 2021 (ECF Nos. 17, 19), an amended answer in November 2022 (ECF Nos. 37, 38), and another amended answer in March 2023 (ECF Nos. 52, 53). (*See also* ECF Nos. 29, 35, 49, 51.) Among Defendant Leightons' affirmative defenses is the allegation that Plaintiff's claims are barred by 42 U.S.C. § 1997e "for failure to exhaust available administrative remedies." (ECF No. 52, PageID.606 ¶ 3.)

### B. Pending Motion

Judge Hood has referred this case to me for pretrial matters. (ECF No. 54.) Currently before the Court is Defendant Leighton's April 20, 2023 exhaustion-based motion for summary judgment pursuant to Fed. R. Civ. P. 56 (ECF No. 62), and the separately but concurrently filed exhibits (ECF No. 63). As noted twice on the record, the Court considered Plaintiff's previously-filed response (ECF No. 47) but did not entertain any reply from Defendant, for the reasons explained in the

Court's April 20, 2023 text-only order. (ECF No. 61.)[1]  Thus, this motion is ready for decision.

    C.    **Discussion**

        1.    **Plaintiff's factual allegations**

In his verified complaint, Plaintiff identifies Deena M. Leighton as a Nurse at JCF.  (ECF No. 1, PageID.23 ¶ 96; *see also id.*, PageID.25.)  Although the factual allegations underlying Plaintiff's claims span a lengthy period of time – *i.e.*, January 2014 to December 2019 (*see id.*, ¶¶ 3-89) – it seems Plaintiff makes only two specific factual allegations against Defendant Leighton:

- On or about November 5, 2019, Plaintiff sought emergent care from MDOC Health Care personnel due to left ear discharge, pain and equilibrium problems.  Defendant Deena Leighton, refused to see Plaintiff, requesting Plaintiff sign a co-pay form.  Plaintiff had family call MDOC personnel (Sgt. Hill), who responded he has no control over MDOC Medical personnel.  Against MDOC policy[,] Plaintiff was not seen.

- On or about November 22, 2019, MDOC Health Care personnel s[aw] Plaintiff (three weeks after trying to see Defendant Leighton), [and] it was noted:  "pain in L ear and drainage with odor.  MDOC noted:  ENT f/u in a couple weeks.["] . . . I tried to be seen three days ago but the nurse would not see me. . . . Actually, it was almost "three weeks", but care was not provided.

---

[1] Two of Defendant Leighton's motions for summary judgment (ECF Nos. 41, 55) were stricken on April 7, 2023 (ECF No. 57), and another motion for summary judgment (ECF No. 58) was stricken on April 20, 2023 (ECF No. 61).  In each case, the Court noted that Plaintiff "should not file a new response[.]"  (ECF Nos. 57, 61.)

3

(*Id.*, ¶¶ 87, 88.)

Plaintiff further alleges that Defendant Leighton and others "displayed deliberate indifference to Plaintiff's serious medical needs by not caring for, delaying needed medical care, causing pain and suffering, physical harm and irreversible damages as described herein." (*Id.*, ¶ 90.) According to Plaintiff:

> Plaintiff's ear drum is perforated, fung[us] was growing inside of ear, and hearing forever diminished. Plaintiff still does not have the Hearing Aid Specialist mandated months ago. Plaintiff's left ear is in need of corrective surgery because Defendants collectively have ignored clear evidence of Plaintiff's serious medical needs, follow-up care and instructions issued from Specialists were ignored in violation of the Eighth Amendment.

(*Id.*) Finally, Plaintiff alleges Defendant Leighton and others "are subject to liability where their respective actions are the legal cause of [his] [c]onstitutional deprivation." (*Id.*, ¶ 97.)

### 2. Defendant Leighton's exhaustion-based motion for summary judgment (ECF No. 62)

Defendant Leighton argues that Plaintiff "failed to exhaust all his administrative remedies prior to filing this 42 U.S.C. § 1983 claim against [her]." (ECF No. 62, PageID.750-751.) "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement . . . requires 'proper' exhaustion, which includes

4

compliance with a state agency's timeliness deadlines." *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

      a.     JCF-19-11-2107-28i

The MDOC's grievance procedure explains that "[c]omplaints filed by prisoners regarding grievable issues . . . serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy." MDOC PD 03.02.130 ¶ C (Mar. 18, 2019). (ECF No. 63-1, PageID.754.) As of August 7, 2020, *i.e.*, approximately four months after Plaintiff initiated this lawsuit, Plaintiff's MDOC Prisoner Step III Grievance Report listed only five grievances pursued through Step III, of which only one appears related to JCF. (ECF No. ECF No. 63-2, PageID.764-765.)

Specifically, on November 11, 2019, Plaintiff completed a Step I grievance form regarding a November 7, 2019 "date of incident," naming Leighton, among others; it was received at Step I on November 12, 2019 and assigned Grievance Identifier JCF-19-11-2107-28i. (ECF No. 63-2, PageID.769; *see also* ECF No. 47, PageID.544.) The November 27, 2019, Step I response mentions that Plaintiff was

5

seen by a specialist on April 3, 2019, was seen by nursing on November 5, 2019, and was seen by the provider on November 22, 2019. (*Id.*, PageID.770.) The grievance was denied. (*Id.*)

Plaintiff completed a Step II grievance appeal on December 5, 2019, and it was received at Step II on December 10, 2019. (*Id.*, PageID.767.) In the December 17, 2019 Step II response denying the grievance appeal, the respondent explained, *inter alia*: "The EHR [Electronic Health Record] shows the date, as indicated in the step I response was on [November 5, 2019], there was nothing on [November 7, 2019]." (*Id.*, PageID.768.) The response also notes, "Grievant chose to leave healthcare on [November 5, 2019]." (*Id.*)

Plaintiff completed a Step III grievance appeal. (*Id.*, PageID.767.) It was received at Step III on January 10, 2020. (*Id.*, PageID.764.) Later that month, the grievance appeal was "rejected as failed to attempt to resolve issue with staff." (*Id.*, PageID.766.) The Step III response was mailed to Plaintiff on January 27, 2020. (*Id.*, PageID.764, 766.)

### b. The date debate

Preliminarily, there is, in Plaintiff's words, "a date debate." (ECF No. 47, PageID.545.) Plaintiff alleges his encounter with Defendant Leighton occurred "[o]n or about November 5, 2019," (ECF No. 1, ¶ 87), and the Step I grievance response states "the grievant was seen by nursing on [November 5, 2019] . . . [,]"

6

(ECF No. 63-2, PageID.770).  On the other hand, in JCF-2107, Plaintiff listed a November 7, 2019 "Date of Incident," and describes a November 7, 2019 attempt to resolve (*id*., PageID.769), but the Step II response states "there was nothing on [November 7, 2019][,]" (*id*., PageID.768).  Thus, whatever date Plaintiff listed as the "Date of Incident," it seems clear that the visit in question occurred on November 5, 2019.  In fact, the MDOC seemed aware of this discrepancy as early as the November 27, 2019 Step I response, based on the following investigation summary:

> Investigation of the medical record showed that the grievant was seen by the Specialist at the Michigan Ear Institute on [April 3, 2019] and was approved for follow up at this Specialist office.  The follow up appointment is pending and upcoming.  The record also showed that indeed the grievant was seen by nursing on [November 5, 2019] and as stated in the complaint the grievant refused to sign a medical request form and that he declined to be seen and exited healthcare.  The record also showed that he was seen by the provider on [November 22, 2019] for a reported ear issue.

(*Id*., PageID.770.)

### c.   Waiver

However, and more significantly, this so-called "date dispute" is not the reason Plaintiff's Step III grievance was rejected.  As a matter of background, the Step I grievance was denied, and the response summarized:  "The record showed that you refused to sign a request form and when nursing requested that you sign

7

the form you declined and exited healthcare." (*Id*.)[2] Also, the Step II grievance appeal was denied, and the response stated, *inter alia*: "Grievant chose to leave healthcare on [November 5, 2019]." (*Id*., PageI.768.) In other words, as Plaintiff correctly notes, these were *merits-based* responses. (ECF No. 47, PageID.546-547.)

Then, in January 2020, Plaintiff's Step III grievance appeal was "rejected," as "failed to attempt to resolve issue with staff." (ECF No. 63-2, PageID.766.) Presumably, the Step III respondent was referencing one or both of the following provisions:

- "A grievance shall be rejected by the Grievance Coordinator if . . . [t]he grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of Internal Affairs in the Office of Executive Affairs." MDOC PD 03.02.130 ¶ J(4) (ECF No. 63-1, PageID.755).

- "Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable

---

[2] According the MDOC policy, "[a] prisoner who does not sign the Prisoner Request for Health Care Services form shall be provided necessary health care services, but a hearing shall be conducted as set forth in PD 04.02.105 'Prisoner Funds' to determine if the funds should be removed from the prisoner's account to pay the fee." MDOC PD 03.04.101 ("Prisoner Health Care Copayment") ¶ K (Feb. 9, 2009). (ECF No. 47, PageID.552.) Yet, even though Defendant notes Plaintiff "declining to fill out the kite to be seen[,]" (ECF No. 62, PageID.750-751), any alleged refusal "to sign a co-pay form[,]" (*id*., PageID.546), does not seem to have a bearing on whether Plaintiff properly exhausted JCF-2107.

8

> issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." MDOC PD 03.02.130 ¶ Q (ECF No. 63-1, PageID.757).

In any event, the Step III grievance response explains: "Per the Electronic Medical Record, a *written* attempt to resolve this issue through a Health Care Request (CHJ-549)/Prisoner Kite for medical services was not found in the EMR." (ECF No. 63-2, PageID.766 (emphasis added).) In his response, Plaintiff contends "[t]here is nothing in the Policy Directive that mandates 'written' attempts at resolution." (ECF No. 47, PageID.547.) However, if the Court agrees that the MDOC has waived an alleged defect within the Step I grievance form, then the Court need not delve into a debate of whether MDOC PD 03.02.130 "mandates 'written' attempts at resolution." (*Id.*)

Here, it can certainly be said that the Step III response for JCF-2107 was not "merits-based." *Reed-Bey*, 603 F.3d at 326. However, as this Court has stated:

> It appears that the Sixth Circuit has not addressed waiver in a case such as this—where the prison addressed the merits at the first two steps and did not raise the procedural defect until Step III. As a matter of policy, it would be unfair to allow prion [sic] officials to address the merits of a prisoner's grievance, but then reject the grievance for a procedural error that existed throughout the process at the final step, where the prison official has the last word. The more reasonable approach to take here is that in cases such as this, the prison should be deemed to have waived the defect.

*Sedore v. Greiner*, No. 19-10311, 2020 WL 8837441, at *7 (E.D. Mich. Sept. 21, 2020) (Whalen, M.J.), *report and recommendation adopted sub nom. Sedore v.*

9

*Campbell*, No. 19-10311, 2021 WL 405987 (E.D. Mich. Feb. 5, 2021) (Davis, J.). *See also Marsh v. Coleman*, No. CV 21-12476, 2022 WL 17184777, at *9 (E.D. Mich. Oct. 31, 2022) (Grand, M.J.) ("because it is undisputed that SRF-0970 was denied solely on the merits at Steps I and II before it was rejected for the first time at Step III based on an alleged procedural defect, such defect has been waived."), *report and recommendation adopted*, No. 21-12476, 2022 WL 17184563 (E.D. Mich. Nov. 23, 2022) (Kumar, J.). Put another way, "when, as here, a prison denies a grievance on the merits only to reject it at Step III on procedural grounds that existed at the outset, courts consider the procedural defect waived." *Burton v. Michigan Dep't of Corr.*, No. 20-CV-12501, 2022 WL 4230909, at *3 (E.D. Mich. July 18, 2022) (Stafford, M.J.), *report and recommendation adopted*, No. 20-CV-12501, 2022 WL 3210794 (E.D. Mich. Aug. 9, 2022) (Leitman, J.).[3] If the MDOC had intended to reject JCF-2107 for failing to comply with MDOC PD 03.02.130 ¶¶ J(4), Q, the time to do so was within the Step I grievance response.

In sum, Defendant Leighton's present motion focuses on the "procedural grounds" for which his Step III grievance was rejected, arguing that Plaintiff's

---

[3] *See also Coleman v. Corizon Health*, No. 5:21-CV-13061, 2023 WL 5988619, at *8 (E.D. Mich. Jan. 19, 2023) (Patti, M.J.), *report and recommendation adopted in part sub nom. Coleman v. Corizon*, No. 21-13061, 2023 WL 5985493 (E.D. Mich. Sept. 13, 2023) (Behm, J.), and *report and recommendation adopted in part sub nom. Coleman v. Corizon*, No. 21-13061, 2023 WL 8480057 (E.D. Mich. Dec. 7, 2023) (Behm, J.).

grievance "does not satisfy the PLRA's exhaustion requirement[,]" because "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).  (*See* ECF No. 62, PageID.750-751.)  However, the MDOC has waived the procedural defect, and JCF-2107 should be construed as properly exhausting a claim against Leighton based on the alleged events of November 2019 (ECF No. 1, ¶¶ 87, 88).  Accordingly, Defendant Leighton's exhaustion-based motion for summary judgment (ECF No. 62) should be denied.

### D. Conclusion

Defendant Leighton seeks relief pursuant to Fed. R. Civ. P. 56(a), which directs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "  Fed. R. Civ. P. 56(a).  As set forth in detail above, Defendant Leighton has not shown that she is entitled to relief for Plaintiff's alleged failure to exhaust available administrative remedies in accordance with 42 U.S.C. § 1997e(a).  Accordingly, the Court should **DENY** Defendant Leighton's exhaustion-based motion for summary judgment (ECF No. 62).

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 16, 2024

                                                Anthony P. Patti
                                                UNITED STATES MAGISTRATE JUDGE